NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

2d Circuit Court-Haverhill District Division
No. 2019-0476

RICHARD HORTON & a.

v.

DAVID CLEMENS & a.

Submitted: May 13, 2020
Opinion Issued: August 11, 2020

Plymouth Law Center, of Plymouth (Gabriel Nizetic on the brief), for the plaintiffs.

David Clemens and April Hanks, self-represented parties, filed no brief.

New Hampshire Legal Assistance (Stephen Tower on the brief), as amicus curiae.

HICKS, J. The plaintiffs, Richard and Janice Horton (landlords), appeal an order of the Circuit Court (Mace, J.) dismissing their petition to evict the defendants, David Clemens and April Hanks (tenants), for nonpayment of rent on the ground that the eviction notice failed to comply with RSA 540:5, II because it did not contain the same information as is provided on the judicial branch form eviction notice. See RSA 540:5, II (2007). We affirm.

The record reveals the following facts. The landlords initiated this possessory action by serving the tenants on June 4, 2019, with a demand for

rent owed for June and a notice of eviction.  The eviction notice informed them that they had until June 12 to vacate the premises, stated specifically that they were being evicted for "failure to pay rent due," and informed the tenants of their right to avoid eviction by paying "all the arrearages plus fifteen dollars ($15.00) as liquidated damages, in accordance with RSA 540:9."  However, the eviction notice did not include the following information, which appears in the judicial branch form eviction notice:

> **NOTE**: This notice is not a court order requiring you to vacate the rental property.  However, if you remain on the premises after the expiration of this notice, your landlord may continue with New Hampshire's lawful eviction process: That process would result in you being served by a sheriff with a summons called a Landlord and Tenant Writ.  If served with a Landlord and Tenant Writ, you will have the right to dispute the reason(s) for the eviction at a hearing before a judge.  To do that, you will have to file a document called an Appearance with the court where the eviction case is filed, no later than the "return date" listed on the Writ.

Thereafter, the landlords filed a landlord-tenant writ seeking possession of the premises, which informed the tenants, among other things that: (1) to contest the eviction, they had to file an appearance no later than the return date on the writ (June 26); and (2) they could not be evicted unless the court so ordered.  The tenants subsequently moved to dismiss the eviction proceeding on the ground that the failure to include in the eviction notice the same information that is provided on the judicial branch form rendered the notice fatally defective and required dismissal of the action.  The landlords objected.

The trial court held a hearing on June 27, at which it heard argument about the motion to dismiss and offers of proof about the merits of the proceeding.  Hanks testified that she and Clemens were served with the eviction notice on June 4, 2019.  Thereafter, the court granted the motion to dismiss.  This appeal followed.

On appeal, the landlords argue that the trial court erred by dismissing their action because the eviction notice need not have included the same information as is in the quoted paragraph from the judicial branch form.  According to the landlords, the information in the quoted paragraph "is outside the scope of any language necessitated by law and beyond the scope of the Circuit Court's authority to create forms that comply with existing law."  The landlords assert that the quoted paragraph "essentially functions to provide tenants with unsolicited legal advice," and "disrupts the careful statutory balance and the self-help provisions of RSA [chapter] 540 by informing the tenants that they are under no obligation to vacate the premises."  Alternatively, the landlords contend that even if the information from the

quoted paragraph is required, dismissal of the eviction proceeding is not the proper remedy for their failure to include it in the eviction notice.

Resolving the issues in this appeal requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. Darbouze v. Champney, 160 N.H. 695, 697 (2010). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. Id. When the language of the statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what the legislature might have said nor add words that it did not see fit to include. Id.

RSA chapter 540 authorizes summary possessory actions to simplify and facilitate the landlord's recovery of possession of the premises. So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 498 (2009). The purpose of such actions "is to permit the landlord to recover possession on termination of a lease without suffering the delay, loss and expense to which he may be subjected under a common-law action." Id. (quotation omitted). "The process is intended to be summary and is designed to provide an expeditious remedy to the landlord seeking possession." Matte v. Shippee Auto, 152 N.H. 216, 218 (2005) (quotation omitted). "Because RSA chapter 540 establishes rights and benefits which a landlord did not enjoy at common law, strict compliance with its terms is required." So. Willow Properties, 159 N.H. at 498 (quotation and brackets omitted).

RSA 540:2, II(a) authorizes a landlord to terminate a tenancy for nonpayment of rent "by giving to the tenant or occupant a notice in writing to quit the premises in accordance with RSA 540:3 and 5." RSA 540:2, II(a) (2007). When terminating a tenancy for this reason, the landlord must give the tenant seven days' notice. RSA 540:3, II (2007). In addition, the eviction notice must "state with specificity the reason for the eviction," and must "inform the tenant of his or her right, if any, to avoid the eviction by payment of the arrearages and liquidated damages in accordance with RSA 540:9." RSA 540:3, III, IV (2007); see RSA 540:9 (2007). RSA 540:5, II requires the circuit court to "provide forms for a demand for rent and eviction notice." It further provides: "Although a landlord shall not be required to use the forms, a valid demand for rent or eviction notice shall include the same information as is requested and provided on such forms." RSA 540:5, II. Importantly, although RSA 540:5, II does not specify the information to be "requested and provided" on the judicial branch forms, RSA 490:26-d authorizes the judicial branch to create judicial forms that are "necessary for the effective administration of justice." RSA 490:26-d (2010).

The landlords first argue that, pursuant to this statutory scheme, they are not required to include on their eviction notice the same information as is

provided in the quoted paragraph from the judicial branch form eviction notice. Rather, they assert, notice of eviction for nonpayment of rent is legally sufficient as long as it complies with RSA 540:3 by: (1) giving the tenant seven days' notice; (2) specifying the reason for the eviction; and (3) informing the tenant of the right to avoid eviction by paying the arrearage and liquidated damages as provided in RSA 540:9. Their eviction notice, they contend, is legally sufficient because it satisfied the three requirements of RSA 540:3.

To support their argument, the landlords rely upon Darbouze. Darbouze is instructive, but contrary to the landlords' assertions, is not dispositive. In that case, the tenant argued that the eviction notice was defective because it was entitled "Notice to Quit." Darbouze, 160 N.H. at 698 (quotation omitted). In rejecting this argument, we observed that "while the better practice would be the use of the term 'eviction notice,' we find no statutory prohibition against the use of the term 'notice to quit,' as long as the substance of the notice satisfies the three . . . requirements" enumerated in RSA 540:3. Id.

The landlords rely upon this language to argue that the content of an eviction notice need only comply with RSA 540:3 to be legally sufficient. However, in Darbouze, although the title of the eviction notice might have differed from that of the judicial branch form, the substance of the two was the same. See id. at 698-99. Accordingly, in Darbouze, we were not faced with the question confronting us today: whether an eviction notice that does not contain the same information as the judicial branch form, nonetheless, is legally sufficient because it contains the information required by RSA 540:3.

The plain language of RSA 540:5, II does not support the landlords' argument. Although RSA 540:5, II does not require a landlord to use the judicial branch forms, the statute expressly provides that "a valid demand for rent or eviction notice shall include the same information as is requested and provided on such forms." RSA 540:5, II. The use of the word "shall" evidences that this is a mandatory requirement. Appeal of Coos County Comm'rs, 166 N.H. 379, 386 (2014) ("The general rule of statutory construction is that the word 'may' makes enforcement of a statute permissive and that the word 'shall' requires mandatory enforcement." (quotation omitted)). Had the legislature intended the eviction notice to be legally sufficient provided that it meets the requirements of RSA 540:3, the legislature could have said so. To the extent that there is any conflict between RSA 540:3 and RSA 540:5, II, RSA 540:5, II controls because both statutes are equally specific as to eviction notices and RSA 540:5, II is the later-enacted statute. Cf. Petition of Public Serv. Co. of N.H., 130 N.H. 265, 283 (1988) (noting that the specific, more recently-enacted statute controls over the general, earlier-enacted statute).

Here, it is undisputed that the eviction notice does not include "the same information as is . . . provided" on the judicial branch form because it does not inform the tenants that: (1) the eviction notice is not a court order requiring

them to vacate the property; (2) the landlords may proceed with the eviction process if the tenants remain on the premises; (3) the process will involve being served with a writ; (4) they have the right to dispute the reasons for the eviction at a judicial hearing; and (5) they must file an appearance before the return date in order to dispute the reasons for the eviction. RSA 540:5, II. Thus, under the plain meaning of the statute, the eviction notice in this case is legally insufficient.

The landlords assert that the language on the form is "beyond the scope of the Circuit Court's authority to create forms that comply with existing law." However, the judicial branch has the authority to create judicial forms that are "necessary for the effective administration of justice." RSA 490:26-d. Informing a tenant of the legal effect of an eviction notice is consistent with that authority. Doing so is also consistent with the judicial branch's general obligation under Part I, Article 14 of the State Constitution to ensure equal access to justice.[1] See N.H. CONST. pt. I, art. 14 ("Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive . . . ; to obtain right and justice freely, without being obligated to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."); see also Huckins v. McSweeney, 166 N.H. 176, 180 (2014) (explaining that the purpose of Part I, Article 14 "is to make civil remedies available and to guard against arbitrary and discriminatory infringements upon access to courts").

The landlords contend that the information in the quoted paragraph "provide[s] tenants with unsolicited legal advice, to the detriment of landlords and property owners, and coaches tenants on ways to not voluntarily and peaceably vacate the premises." According to the landlords:

> Our statutory scheme . . . establishes an orderly process, with some provisions for curing, negotiating, and extensions of time, . . . prior to the landlord filing for a judicial order of removal. Indeed, if every landlord dispossession required a judicial order, the deluge of cases would likely quickly overtax the capacity of the courts of this State. The trial court's ruling upsets that conscientious balance and tips the scale in favor of the tenant.

[1] Indeed, the quoted paragraph at issue in this case is part of a revision to the form that was recommended by a subcommittee of the New Hampshire Access to Justice Commission (the Commission). The proposed revisions were then reviewed and further modified by circuit court judges and circuit court clerks of court and later promulgated by the administrative judge for the circuit court.

We created the Commission in January 2007 consistent with Part I, Article 14 of the State Constitution so as to "expand access to and enhance the quality of justice in civil legal matters for New Hampshire residents." The language at issue was added to the form in 2018 "to provide parties with more complete information about their rights and responsibilities under RSA [chapter] 540."

In effect, the landlords argue that the statutory scheme purposely intends that tenants not be informed of the legal significance of the statutorily-mandated eviction notice so as to prevent tenants from being aware of their legal right to contest evictions. The landlords assert that, if a tenant is aware of his right to contest an eviction, then every tenant will do so and every "landlord dispossession [will require] a judicial order," resulting in a "deluge of cases." We decline to attribute to the legislature an intent to ensure that tenants are not informed of their right to contest what may be a false or mistaken attempt to evict in the hope that tenants will erroneously believe that the eviction notice <u>does</u> require them to vacate, regardless of whether they have a defense to the eviction.

Although we have interpreted the statutory language in RSA 540:5, II according to its plain meaning, and, therefore, need not look beyond it for further indication of legislative intent, <u>see</u> <u>JP Morgan Chase Bank v. Grimes</u>, 167 N.H. 536, 537 (2015), we note that the legislative history supports our construction. RSA 540:5, II had its genesis in House Bill (HB) 1116 in the 2006 legislative session. <u>See</u> Laws 2006, 192:2. The purpose of HB 1116 as it related to RSA 540:5, II was to "direct[ ] the district court system to create forms for both the Demand for Rent and Eviction Notice for use by landlords in order to minimize the number of eviction actions dismissed for technical defects that sometimes occur in such documents when prepared by non-lawyers." <u>N.H.H.R. Jour.</u> 656 (2006).

The landlords' interpretation of RSA 540:5, II is contrary to the stated intent of the provision, which is to encourage landlords to use judicial branch forms. The landlords' construction, however, would have the opposite effect. It would encourage landlords to use their own forms that omit important information for tenants, such as that the notice is not a court order requiring the tenant to vacate. The landlords' construction would, in effect, create two classes of tenants — those who are informed of their legal rights and those who are not informed of their legal rights, all at the landlord's discretion. This was not the legislature's intent.

Alternatively, the landlords argue that, even if the quoted language from the judicial branch form is required, dismissal was not the proper remedy. However, contrary to the landlords' assertions, we have consistently ruled that strict compliance with the mandates of RSA chapter 540 is required. <u>See</u> <u>Buatti v. Prentice</u>, 162 N.H. 228, 230 (2011); <u>So. Willow Properties</u>, 159 N.H. at 498; <u>Matte</u>, 152 N.H. at 218; <u>Lavoie v. Szumiez</u>, 115 N.H. 266, 267 (1975). A dismissal on the grounds that the landlord's eviction notice fails to comply with statutory requisites is not a judgment on the merits and does not preclude the landlord from filing a new eviction notice and a new writ for possession. <u>See</u> <u>So. Willow Properties</u>, 159 N.H. at 499 (holding that "the trial court's dismissal, based upon a technical defect in the notice to quit, was not a decision on the merits" and, accordingly, did not bar the landlord's second lawsuit). Of course,

"it is within the power of the legislature to determine the proper remedy" for a landlord's failure to comply with RSA 540:5, II, "should it wish to do so, by enactment of appropriate legislation." Buatti, 162 N.H. at 231.

For all of the above reasons, therefore, we affirm the trial court's dismissal of the eviction proceeding in this case.

Affirmed.

BASSETT and DONOVAN, JJ., concurred; BROWN, J., retired superior court justice, specially assigned under RSA 490:3, concurred; HANTZ MARCONI, J., concurred specially.

HANTZ MARCONI, J., concurring specially. Although I join the court's opinion in full, I write separately to underscore what I take to be the limited nature of the opinion's holding. The court does not hold today that the judiciary has free rein to legislate requirements for summary process actions in addition to those specified in RSA chapter 540. The court does not, for example, address whether the judiciary, under the auspices of RSA 490:26-d, could craft a standard eviction notice form that advised tenants as to the circumstances in which they may have a defense to eviction. See, e.g., RSA 540:13-a (2007) (establishing retaliation as a defense in possessory actions under certain circumstances). Rather, as the court notes, the language at issue does no more than inform tenants of the legal effect of the notice on which that language appears. Although the provision of such information, in this context, may be "necessary for the effective administration of justice," RSA 490:26-d (2010), we ought not uncritically assume that everything that furthers the administration of justice is necessary therefor. Understanding the court's opinion as not having done so in this case, I join that opinion in full.

7